In re William P. BROSNAHAN, Jr., Debtor.

Mark S. Wallach, Trustee, Plaintiff

v.

William P. Brosnahan, III; Mary T. Brosnahan; and Anne Slubowski, Defendants.

Daniel H. Williams, III, Plaintiff in Intervention,

v.

William P. Brosnahan, III; Mary Brosnahan Wachter; Anne Brosnahan Slubowski; Colad Group, Inc.; Anne Laura Koessler Brosnahan, and Raymond Fink, Defendants in Intervention.

Bankruptcy No. 02–11554 B.
Adversary No. 03–1066 B.

United States Bankruptcy Court, W.D. New York.

Oct. 5, 2007.

**388**

Daniel H. Williams, III, Buffalo, NY, pro se.

Harter, Secrest & Emery LLP, William H. Helferich III, of counsel, Rochester, NY, for Defendant in Intervention Raymond L. Fink.

## DECISION & ORDER

CARL L. BUCKI, Bankruptcy Judge.

In the only unresolved part of this adversary proceeding, a creditor seeks to impose liability upon the debtor's counsel for damages resulting from assistance that the attorney provided in support of his client's allegedly deceitful conduct. The defendant now moves to dismiss this complaint for failure to state a cause of action.

In 1991, Daniel H. Williams, III ("Williams"), started an action in the New York State Supreme Court against William F. Brosnahan, Jr. ("Brosnahan"), to recover damages arising from an alleged breach of contract. After nearly a decade of litigation, Williams obtained a judgment against Brosnahan in the amount of $1,173,158.10. Brosnahan appealed, but the Appellate Division of State Supreme Court affirmed that judgment on June 14, 2002. Six weeks later, on July 26, 2002, Brosnahan filed a petition for relief under chapter 7 of the Bankruptcy Code.

Both before and after entry of the state judgment, Brosnahan took various measures which were arguably designed to impede collection. For purposes of the present discussion, two of these actions require particular mention. As part of a series of transactions in 1997, Brosnahan and his wife gave to their children a mortgage on the family homestead to secure a purported obligation in the amount of $750,000. This mortgage, however, was never recorded. Then in 2001, after the jury verdict in Williams' favor but prior to entry of judgment, Brosnahan and his wife gave a mortgage to Key Bank to secure a line of credit in the amount of $352,000. Having no knowledge of the earlier unrecorded mortgage, Key Bank recorded its lien prior to release of the credit line.

The present dispute represents the final episode of a complex bankruptcy case. Out of 28 adversary proceedings associated with this bankruptcy, only the present matter remains open. Originally, the trustee commenced this adversary proceeding against the Brosnahan children, to avoid their unrecorded mortgage and to pre-

serve its lien for the benefit of the estate. The parties have resolved that controversy, by means of a settlement that ultimately resulted in a full release of all claims against members of the Brosnahan family. Instead, the remaining dispute relates to a Complaint in Intervention that Williams initiated within the present adversary proceeding, as against the debtor's wife and children, a related corporation, and Raymond Fink, their prior attorney. In light of the various releases, only Mr. Fink stands as a defendant at this time.

Raymond Fink has now moved to dismiss the Complaint in Intervention pursuant to of action. In partial response, Williams has cross moved for permission to file an amended complaint. For purposes of the present discussion, I will consider only the amended version, to determine whether Fink's motion should be granted even as to the revised form of the complaint.

As against Raymond Fink, the Amended Complaint in Intervention recites four causes of action. Essentially, however, all of these claims assert that Fink participated in various forms of deceit and collusion. Williams further bases his claim for damages on section 487 of the New York Judiciary Law. In relevant part, this section states that an "attorney or counselor who ... [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party ... [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

The Court of Appeals has stated that " 'deceit' means fraudulent representation." *Jones v. United States*, 207 F.2d 563 (2nd Cir.1953), *certiorari denied*, 347 U.S. 921, 74 S.Ct. 518, 98 L.Ed. 1075 (1954), *rehearing denied*, 347 U.S. 940, 74 S.Ct. 627, 98 L.Ed. 1089. Accord, BLACK'S LAW DICTIONARY 413 (7th ed.1999). The concept of collusion is similar, in that it constitutes "[a]n agreement to defraud another or to obtain something forbidden by law." BLACK'S LAW DICTIONARY 259 (7th ed.1999). In the present instance, the allegations of deceit and collusion can be divided into two categories of events: those that occurred prior to bankruptcy and those which occurred during the bankruptcy process.

With respect to pre-petition activity, the only serious accusation relates to Fink's role in helping his clients to obtain the mortgage from Key Bank. The amended complaint alleges that although Mr. Fink had represented Key Bank on other matters, he nonetheless arranged and negotiated a loan that violated the bank's own rules and regulations. In closing that loan, Fink allegedly failed to disclose the existence of the prior unrecorded mortgage. Further, the complaint asserts that the Key Bank mortgage violated covenants that Mr. and Mrs. Brosnahan had made in the prior mortgage for the benefit of their children.

With respect to the bankruptcy process, the complaint alleges deceit and collusion by Fink in his preparation of schedules and the statement of financial affairs. In particular, Williams identifies nine inaccuracies in the debtor's original submissions. Most significantly, Brosnahan failed to disclose the unrecorded mortgage in favor of his children. Further, Fink represented Brosnahan at the first meeting of creditors, when Brosnahan affirmed under oath the accuracies of the bankruptcy schedules and statement. Although the debtor eventually amended his submissions to correct these errors, the plaintiff asserts that that amendment could not remove the taint of counsel's wrongful conduct. In response, Raymond Fink argues the innocence of

any misrepresentations. Because Bankruptcy Rule 1009 allows a debtor to amend any schedule or statement as a matter of course, Fink contends also that the debtor's amendments serve to avoid liability for any inaccuracy in the initial filing.

■ We need not now decide whether some form of deceit or collusion may have occurred in the present instance. Rather, it suffices to note that if a cause of action exists, it belongs to an entity other than Williams. Only Key Bank can assert a claim for misrepresentations made to induce an extension of credit by Key Bank. Similarly, any breach of a mortgage covenant will give rise to a cause of action by the mortgagee only, and not by any third party like Daniel Williams.

Williams devotes most of his argument to allegations of deceit and collusion with respect to representations in this bankruptcy proceeding. By impeding the administration of the bankruptcy estate, a debtor's false representations will impair the rights of all creditors generally. Accordingly, to the extent that a cause of action would arise from such false representations, that cause of action would inure not to the special benefit of any individual creditor, but for the general benefit of the bankruptcy estate. Pursuant to 11 U.S.C. § 541(a)(7), the estate includes any interest in property that the estate may acquire after the commencement of the case. In the present context, therefore, such property would include a cause of action arising under section 487 of the New York Judiciary Law for false representations on behalf of a debtor in bankruptcy. In seeking to recover for the alleged deceit and collusion of Mr. Fink, Williams asserts a cause of action that belongs not to him, but to the bankruptcy estate.

In his papers, Williams suggests that Fink may have assisted Brosnahan in undertaking measures to impede the collection of Williams' judgment. That, however, does not by itself constitute deceit or collusion. Just as creditors enjoy a panoply of rights to aid the enforcement of their judgments, debtors may exercise every legal means to impede that enforcement. So long as debtor's counsel makes no false representation to the creditor, that creditor holds no claim for deceit or collusion by counsel, pursuant to section 487 of the New York Judiciary Law or otherwise. In the present instance, Williams would rely upon allegedly false representations made not to himself personally, but to Key Bank, to the Brosnahan children, and generally to the bankruptcy estate. Accordingly, Williams holds no personal cause of action that he may now individually assert as against Raymond Fink.

For the reasons stated herein, Williams has failed to state a cause of action as against Raymond Fink. Accordingly, with respect to Mr. Fink, the present adversary proceeding is dismissed.

So ordered.